Our final case of the day, R.S. v. Board of Directors of Woods Charter School, Mr. Bader. You're going to explain that to us. Good to have you here, sir. Thank you, Your Honor. Good morning, and may it please the Court. My name is Stephen Bader. I'm an attorney at Cranfield, Sumner, and Raleigh. Along with my colleague Donna Rasko, we represent the Woods Charter School. This is a case about attorney's fees under the Individuals with Disabilities Education Act. There are two issues in this appeal. The first is whether the plaintiff's former attorneys had standing under the Act to bring their own motion for attorney's fees. The second is whether the District Court, in making an award of attorney's fees, abused its discretion in deciding the plaintiff's degree of success. We would respectfully ask that this Court remand this case back to the District Court with the finding that the former attorneys do not have standing to bring their motion and direct the District Court to recalculate the award within the discretion that it has afforded. I want to start with the standing issue. The District Court in this case... Is standing really the right term? I know it's what you all... everybody's used it. Is standing really the right term? It is, Your Honor, and here's why. The Court received two motions for attorney's fees in this case. Right. I understand. A motion filed by the plaintiffs, and then a motion the next day filed by their former attorneys. Well, it said it was filed by the plaintiffs. That... It was filed by the plaintiffs. The plaintiffs are the right party. Absolutely. That's right. And Judge Schroeder... pretty... able fella. Not an issue in this appeal, Your Honor. He did pretty well. Not an issue in this appeal, Your Honor, but I do want to get to that question because when the Court looks at his memorandum and opinion and specifically... Two sets of lawyers. Right. That's what the... Well, that is and it isn't. Two sets of lawyers. And they did a lot of work here. But I disagree to some extent... It's a fee-shifting provision. That's correct. It's like 1988. Also correct, but important to the standing question. Because when this motion came in, Joint Appendix 362, the former attorneys didn't file it for the plaintiffs. They weren't asking for relief for the plaintiffs. They filed it on their own behalf. And Judge Schroeder, in his order, Joint Appendix 809, specifically framed the issue. He said the plaintiffs clearly have standing. That's not an issue here. But the former attorneys are not the prevailing party, and yet they brought this motion for attorney's fees on their own behalf. But he awards fees to the plaintiff. Right. That's the problem. It's how he gets there that's the area. There's no award to the lawyers. Right. The fee award is to the plaintiffs. That's what the statute says. They have a right to make the claim for the fees and the cost. We do not disagree with either of those. It's just about which lawyer is entitled to ask for fees on behalf of the plaintiff. Yes, and I think... How is that a standing question? Well, we need to get to... Well, for this reason. Is there an argument that the lawyers don't have a concrete, an Article III interest in this case? Yes. They don't represent the plaintiffs. I'm sorry, but the plaintiff's the one who got the money. I'm sorry. I don't see the absence of sort of any Article... Are you talking maybe about prudential standing? Like who should represent whom? I just don't see how this is an Article III issue. Because the movement in this case that we're challenging is not the plaintiff. We agree they have standing. The movement is the former attorney. The former attorney did not bring the motion for the plaintiff. I think... Wasn't the plaintiff in the caption? The movement sought that relief on their own. Isn't the plaintiff in the caption? Well, certainly they're in the caption. I understand the Article III problem. I understand like the tricky question about which lawyer is speaking for whom. But I... Counsel, let me ask this question. Had the former attorneys simply sent their materials to the current attorneys, and the current attorneys had simply attached it as an exhibit, and the current attorneys had filed a single motion on behalf of the parents seeking all of the fees, would you have any issue, and would we be here today? I've thought a lot about that. We would not be here on a standing argument with respect to the former attorney's attempt to seek their relief. There may be other arguments that we would have about that presentation that are unique to this particular case. And Judge Schroeder spells a lot of that out. Years of protracted litigation, unnecessary... That's about the reasonableness of the fees, not about whether or not the parents, who are the prevailing parties, are able to seek whatever quantum of fees and costs are related to their litigation of the case. The judge doesn't have to accept that they're all necessary or reasonable, but there would be no reason why the court could not consider all of those fees, even though they involve more than one set of attorneys. I think that is correct in the sense that it wouldn't be a standing argument. What I'm simply saying is there may be other arguments, had the matter came before the court that way, that we would have advanced or not before the court now. But I really do want to dial in... Can I just stop you on that for a minute, because I am sort of curious. One of the things we have to think about is the implications of your argument. And the implications are pretty minimal, if you can get around any problem here by simply stapling the two things together and having the current lawyers submit it. It also seems highly formalistic. But if you are saying, no, that might not be an avenue in this or other cases, then I become more concerned about the implications of the position you're taking. Then how is the prevailing plaintiff supposed to get the fees for the work done by the first set of lawyers? If they can't just have the current lawyers submit it, and they can't submit it on their own, how are they supposed to get the fees? There is no reason that the plaintiffs couldn't have their current attorneys do that. Okay, I thought you said there might be reasons... No, there may be reasons in particular... You're trying to elevate form over substance. No, I... Well, you're saying that they could do it another way, that current lawyers could do it. I think what you really want is you don't want the plaintiffs to get an award for what the first lawyers did. That's what it looks like. Well, here's why I disagree. You want to factor them out. I want to dial in on the standing question. I'm certainly not going to get before this court that if the plaintiffs, as the prevailing party, defined in the statute as the parent of a child with a disability, that if they bring the motion, they don't have standing. That's not accurate. But that's not what happened here. And the problem with what Judge Schroeder did is he... Judge Schroeder explained what happened here. He laid it all out, his opinion. What he did is he adopted a test that said the question is consent. He laid out the facts in the opinion. He laid out the facts. I don't disagree... He explained it very, very well. Here's the wider implications. I think to dial in on what... You're taking a different... You've got a different scenario. Put a different turn on it. That would be to the advantage of your client, for sure. Well, it also... I can understand that. There's also broader concerns with how this matter came before the court. And that's really where we want to focus here. There is no dispute that the former attorneys do not represent the plaintiff. And so when Judge Schroeder... They withdrew, right? They were replaced. Right. But here's why that's important, though. That happens in lawsuits. Absolutely. Prosecutions, lawyers get in, get out. That happens. When Judge Schroeder decided the standing question, he said... Plaintiffs are the same for the first part of the case and the last part of the case. When Judge Schroeder decided the standing question, he said, I have to look to see if there's consent. And here's the bigger argument. If consent is anything other than representation, what we are inviting district courts to do in any kind of a fee-shifting case is potentially resolve peripheral issues about whether or not a former attorney who does not represent the plaintiff has that plaintiff's consent to file a motion on their own behalf to get fees. And the district court... As I read what happened in the district court, I thought your big argument was that... Shoot, I'm going to forget the name of the case. But the Davidson case, you need a certificate of consent. And there was no certificate here. A declaration from the plaintiff, a formal declaration. And there wasn't one here. So that was the problem. And the district court acknowledged that, that, yeah, it'll be a lot easier if people will submit a declaration, but went on to find on these facts, on this record, I can nevertheless find consent. So, I mean, I guess it seems to me that now mostly what we're arguing about is whether the district court's factual finding was correct. I mean, if there was consent, what is the problem? I don't think that factual finding is squarely the issue. I think it still remains... I don't think we're arguing... To respond to Judge Harris's comment and question, we're not arguing factually whether there's consent. We're saying that... If there was consent, then what is the problem? The question is whether or not, as a matter of law, standing can be conferred from a party to their former attorney using consent. And when you look at... The party is the one who got the judgment. It's the judgment that has to comply with Article III. The question of which lawyer represents whom, I don't see how that is not a question that is at least largely resolved by consent. If consent is something other than representation, you are inviting courts to get involved in these kind of peripheral disputes. About whether or not there's consent. Absolutely. Okay, fine. And I think we can all agree it would be a lot cleaner if you had a declaration of consent or something like that. Or if people don't change lawyers, everything could be easier. But this district court did get involved in the question of consent and found consent. So... You needn't be arguing that his finding was clearly erroneous. And then you'd have something. You don't make that argument. Respectfully, Judge King, I think we still have something. When you look at Davidson, which is where Judge Schroeder turned, consent in that case dealt with representation. That was the issue. They filed a motion. The defense moved to dismiss. And the district court said, well, do you represent this group of plaintiffs or not? Submit something to show us that you do. It didn't happen. The case was dismissed. Later in a different case that cites Davidson, Adams v. Compton Unified School District, a case out of California, the plaintiff did the exact same, or the attorneys, I'm sorry, did the same thing as the former attorneys here. Filed a motion for fees on their own behalf and said, we don't look at that. And that court said, no. We don't look at what the agreement was. We look at what the statute says. Congress created this act. You are not a prevailing party. You are not the parent of a child with a disability. I totally agree that had the district court awarded fees to the lawyers, we would have a serious problem. But that isn't what happened. So I guess I am just not clear why the prevailing party language is sort of relevant here. The money went to the prevailing party. But the motion was not brought by the prevailing party. It was brought by the attorneys. So what Judge Schroeder did is almost, it's at page 362. And what Judge Schroeder did was almost, and not to bombard your honor with too many page citations, but at 809, Schroeder clearly says that's what happened here. These attorneys are bringing the motion for fees on their own behalf. And I want to make sure I hit on the Second Circuit's opinion in Brown v. General Motors. That's a case arising out of the Civil Rights Fee Act, which is similar to this act here. And the court says the problem with a former attorney bringing motions on their own behalf is they don't represent the plaintiff anymore. They're not necessarily aligned with the plaintiff's interests. And so that creates an issue for everybody involved by simply saying before our agreement let us do this, we can do it now. That's where the consent comes in. But then the question becomes how do we judge it? This district court judged it this way. And if you don't think that he was wrong in finding consent, and also the motion does identify R.S. as the prevailing party. And it does have R.S. in the caption of the motion. It doesn't purport to be in action by the attorneys. And the judgment awards the fees in the same kind of language in the opinion that I think is sort of colloquially saying look, the former lawyers brought this thing, not R.S. as represented by current lawyers. But I just don't see how we could say that this was a motion brought so that fees would be awarded to the lawyers. It's not what the motion said. It's not what happened. And, Your Honor, I can't say anything more than it's brought by the former attorneys as move-ins seeking the relief. Schroeder identifies that. But I want to make sure before I get into my rebuttal time I at least hit on the abuse of discretion standard very briefly in pointing out this. Courts are not supposed to use a mathematical formula here. Judge Schroeder did a long analysis of hourly rates. You're getting to the mouth of the word now. Right. It's long. It's detailed. But when he gets to the degree of success, the most important factor, then all of a sudden he reverts to math. His math doesn't make any sense and he just almost says 33%. It just almost comes out of thin air. He says that these plaintiffs succeeded on 57% of their claims, that they were awarded 20% of the relief that they sought, but that they somehow achieved a 67% rate. He said because they did prevail well what he did, it's still using that 57% number. So our position on that is using his discretion, if he's going to use metrics like that and using his discretion, they need to add up. Otherwise we don't have any ability to understand how he gets to that number. I want to make sure I reserve the rest of my time for rebuttal. I do appreciate the panel's time. Thank you very much. Mr. Howard? Good to have you with us, Mr. Howard. Good morning, Your Honor. Thank you very much. Good morning, Your Honor. My name is Keith Howard. I represent the plaintiff appellees, R.S., in this matter. Today, Your Honor, we respectfully request that you affirm. You can take the mask off. Oh, I'm sorry. Your Honor, we respectfully request... It's up to you. Leave it on if you like. No, I don't want to leave it on. We respectfully request that this court affirm the lower court's decision to award attorney's fees to the plaintiff, R.S., in this matter. At the outset, Your Honor, the first issue provided by the appellant is a misstatement of the actual holding of the case. The district court judge did not provide an understanding to the former attorneys to file a motion for attorney's fees on their own behalf, but instead allowed them to file attorney's fees on behalf of the plaintiff. Unfortunately, we, current counsel, were not involved in the beginning in the OAH State Board of Education review or at the very beginning of the district court appeal, so we were not able to attest to or discuss how they arrived at their fees, how they arrived at their calls. We agree that it would have been a cleaner approach if we had simply attached former counsel's fees and calls to our motion for attorney's fees and calls. Unfortunately, we did not do that. However, that does not take away from the fact that the district court awarded fees to the plaintiff, R.S., in this... You just said something. I just want to make sure I understand. That you couldn't attest to their fee request because you weren't involved. I thought you were about to say, and that's why we couldn't just attach their motion to our motion and then sign it because we're not in a position to do that. But are you saying that you could have attached it to yours and done kind of one omnibus filing or that you couldn't? Yeah, I do not know the answer. I believe that we could have. We did not know that local rules did not provide the process or the procedure for doing that. We were ordered by the court once the court determined that the former counsel had the authority to file their fees on behalf of the plaintiffs. At that point, we all, both sets of counsel, provided motions for attorney's fees and calls. I would think you could have asked for all the fees on behalf of the client, your client. If you were the lawyer at the time, it could have been done that way. I think that's sort of what McAnuff mentioned. But regardless, it was all before the court what the legal fees claims were. And the court knew that they were all for the benefit of the plaintiff. As the statute says, it's a claim by the plaintiff. On behalf of the plaintiff, and the question left was how much? They were prevailing party under the statute. And then how much? And he made the award. And they say that it's still too much. But none of that other ballot. And the judge messed it up. You are absolutely innovative. I'll be honest with you. It was my reaction. I appreciate the other side's position. And I'll study on it some more. Your Honor, you are correct. After the fact, we could have filed, we should have filed all the fees together. However, what we were provided, the court allowed the former counsel to file their attorney's fees and calls, which were extensive on behalf of the plaintiffs. Once the court issued that order, both sets of counsel filed attorney's fees on behalf of the plaintiffs. It's our position that that doesn't take away from the final order, which allowed the plaintiffs to receive attorney's fees and calls for the period of 2015 to, I believe it was 2020. And so with that said, Your Honor, we respectfully request that you affirm, you deny the first issue and affirm the district court's ruling. In their opening brief, Your Honor, appellants argued that the district court erred as a matter of law in holding that plaintiffs' former attorneys had standing to bring a motion for attorney's fees on their own behalf under the IDEA. That's a misstatement of the actual holding. Joint Appendix 812 is very specific that the court held that the plaintiffs were entitled to attorney's fees and calls, not the movements, not current counsel. It's very clear under the IDEA that only the plaintiffs have authority to seek attorney's fees and calls. However, the counsel had to provide evidence of those attorney's fees and calls. That's what former counsel did. That's what current counsel did. And then Judge Schroeder meticulously went through the analysis and came to the conclusion that the plaintiffs were entitled to attorney's fees and calls at a certain amount of money. It was a total of $519,000. An issue that didn't come up earlier is the fact that Rule 28A.8.2 is very specific. It says that if a party fails to, the appellant fails to appropriately and accurately cite an error of law, the case must be dismissed. On that ground, Your Honor, we ask that Issue 1 be dismissed because the appellants failed to appropriately state and precisely state the actual error of law. Instead, they said that... You said Rule 28A or whatever it was. What rules? The Federal Rules of Appellant Procedure, Your Honor. You're not talking about some local rule or anything? No, Your Honor. I apologize. Federal Rules of Appellant Procedure. And because they failed to accurately state the precise issue, they failed to allege an error of law. In addition, the second issue... That's a pretty technical point. It is, Your Honor. The second issue that the District Court abused... We're not going to buy into that. I wouldn't. Thank you, Your Honor. The District Court abused its discretion in deciding plaintiff's degree of successful purposes of awarding attorney's fees. Your Honor, again, Rule 28A.8.2.A specifically requires citation to the record and authorities, and they failed to do that in their opening brief. Going to the first issue on a marriage, Your Honor. Appellants have misstated the District Court's holding, reasoning, and order regarding their first issue. That's Joint Appendix, page 808. The District Court did not hold that former attorneys had standing to file a motion on their own behalf to recover their attorney's fees. The Court did not award any fees to the former attorneys. The District Court recognized that only the parent, and not an attorney seeking to vindicate his own interests, has standing to seek attorney's fees under the IDEA. That's on Joint Appendix, page 809. Former attorneys were aware of that rule and cited to it in their memorandum of points and authorities in support of their motions for attorney's fees. That's Docket Entry 106, Your Honor. In their response to the District Court's standing order, Docket 127, Adams Affidavit, which is on Joint Appendix, pages 697-706, and Adams Affidavit, pages Joint Appendix, 709-718. Defendants argued that the District Court elevated parents' knowledge and consent of former attorneys' actions as half-creating standing for former attorneys to file a motion for their own attorney's fees and costs. That's simply not true, Your Honor. The underlying rational rationale for parents, rather than their attorneys, having a right to seek attorney's fees is that it ensures that plaintiff retains control over the litigation and avoids any conflicts of interest between attorney and client. In other words, this Court must ensure that R.S.'s father, Ronald Soltis, consents to Adams and Weiner's motions. That's on Joint Appendix, page 810. The District Court held that former attorneys had standing to file a motion for attorney's fees on behalf of the plaintiff's father and awarded plaintiff's father $519,350.76 in attorney's fees and costs. Your Honor, that number was derived from a number in excess of a million dollars. It was over a 14-day due process hearing and over several years of litigation. The Court considered the following evidence at Joint Appendix, page 809-812. Parents' fee agreements required that they pay former attorneys and provide former attorneys the ability to file a motion for attorney's fees. It's Joint Appendix 709-718 and 738-740. Plaintiff's father was required to pay former attorney's fees pursuant to written agreements which provided that former attorneys would file a motion for attorney's fees. Two parents were actively involved in the litigation, including before and during the period attorney's fees motions were filed. Parents directed current counsel to work with Adams' former counsel and wanted to file for attorney's fees, Joint Appendix 719-727 and Joint Appendix 728-735. Three, the affidavits of counsel state that plaintiff's father, Ronald Soltis, emailed all counsel to keep him updated on the status of the attorney's fees and costs. In response, Mr. Adams' former counsel, law firm, emailed plaintiff, Ronald Soltis, and informed him that they would be seeking attorney's fees and costs on their behalf. Four, current counsel had a right to represent plaintiff's position which current counsel did, that plaintiff specifically requested that all attorney's fees and costs be submitted for purposes of establishing attorney's fees and costs in the district court. Five, the court distinguished this case in their order from Davidson where the court dismissed a case brought in the name of plaintiff's mother when he failed to produce a declaration from the plaintiff attesting to her knowledge of the fee motion. That's distinguishable from this case. There's no case, no Fourth Circuit jurisprudence that specifically says that a declaration is required. Consent was enough, and the consent was provided. It would be a little bit easier if there had been a declaration from the parents, wouldn't it? Absolutely, Your Honor. It would have been easier, it would have been much easier. However, the plaintiffs did provide consent on multiple occasions to me and to my co-counsel that they expected us to seek attorney's fees and costs from all four attorneys because they were ultimately responsible for those fees, and they were deemed a prevalent party. And that's not in dispute. And so as a prevalent party, they were entitled to attorney's fees and costs which Judge Schroeder appropriately determined was $519,000. The district court distinguished the case from Davidson in this order because former attorneys submitted contemporaneously evidence of the parents' knowledge and consent and therefore a declaration was not required. Quote, unquote, in other words, it is clear that Adams and Warner's fees action was commenced with the knowledge and consent of the plaintiffs. The district court ultimately held, quote, unquote, in sum, the court finds that Ronald Soltis as prevalent party who is a parent of RS is entitled to reasonable attorney's fees, Joint Appendix 811. Accordingly, the court finds that Adams and Warner have standing to bring their motion-seeking fees for Ronald Soltis, very clearly stated on Joint Appendix page 812. Appellants argue that plaintiff's parents only consented to former attorneys seeking to recover money actually paid by parents. Open and brief page 19-21. Plaintiff's parents are not attorneys and are not sophisticated. They requested that all four attorneys seek attorney's fees and cause on their behalf and that's what was done in this case. Appellant's analysis would leave plaintiff's parents financially responsible for hundreds of thousands of dollars had counsel not filed motions to recover attorney's fees and cause for each individual counsel. Plaintiff respectfully submits that it would be unjust and inequitable to exclude the motion papers submitted by former counsel in this matter. To the second argument, Your Honor, Appellant's second issue is that a district court abused its discretion in deciding plaintiff's degree of success for purposes of award fees. Plaintiff apparently disagrees with that statement. In determining the amount of an award of reasonable attorney's fees, a district court is required to first determine the low start, meaning the number of hours reasonably expended on the litigation multiplied by a reasonable rate against the proceeding of roles for the kind and quality of services furnished. That's 20 U.S.C. 1415 I3C and also Hensley v. Eckert. The low start figure is then assessed in light of the 12 factors set out in the Johnson v. Georgia Highway Express Inc. case and also in J.P. Peterson v. County School Board of Hanover County. Because of time, Your Honor, I'm going to go over the 12 factors. The most critical factor in determining the fee award is the degree of success. In evaluating the degree of success, the court does not simply take a quote-unquote mathematical approach comparing the total numbers of issues in the case with those actually prevailed upon. Despite this admonition from the United States Supreme Court to not simply compare the total number of issues in the case with those actually prevailed upon, and despite their recognition that a quote-unquote rigid mathematical approach is disfavored, opening brief at 23, appellants argue that the mathematical approach shows that plaintiffs only achieved success on 57% of the issues. Therefore, appellants contend that the district court abused its discretion in awarding attorney's fees equal to 67% of the Lowe's star. Your Honor, it's very clear once you read the judge's order that it wasn't simply just a 33% reduction. The court reduced hourly rates. The court reduced current counsel fees by almost 50%. I mean, it was, the court went through and really, you know, went through a very rigid approach to coming to its ultimate conclusion. The initial request was $1.2 million, right? And now we're down to $500,000. That's correct, Your Honor. There were some substantial cuts made here. Very substantial, Your Honor. There was no cross-appeal. There was no cross-appeal, Your Honor. We accepted, it's been so long, Your Honor, we accepted the court's decision even though it really did reduce the fee award and the cost significantly. Relying upon a mathematical approach is disfavored by the United States Supreme Court and that's not sufficient to sustain appellant's burden of proving that the district court abuses discretion. For that reason alone, appellants should not prevail on this second issue. The district court found that there were seven primary legal issues in the dispute. One, application of the North Carolina Statute of Limitations. Two, whether the charter school failed to provide parents with access to plaintiff's records. Three, whether the charter school provided services comparable to the services in plaintiff's IEP for the 2012-2013 school year in the areas of speech and language, physical education, and assistive technology training. Four, whether the charter school violated the IEDA by holding an IEP meeting without plaintiff's parents. Five, whether the charter school violated the IEDA by failing to timely develop an IEP. Six, whether the charter school violated the IEDA by disenrolling plaintiff in seven, and the IEDA was violated and constituted a denial of free and appropriate public education. That's on joint appendix pages 836-837. The district court held that plaintiff could fairly be said to have prevailed on four of the seven issues. That meant that plaintiff prevailed on approximately 57% of the issues, joint appendix 837. But that's a substantial, that's more than 50%, that's substantial. Citing the Hensley Court's admonition against using a mathematical approach, the district court went on to consider other factors identified in the Johnson case. That's the 12 factors. And quote-unquote, filing the actual award, the actual award directed, funded private education related services for approximately 384 hours to compensate for services RS was denied during the 2013-14 school year. And the court said it was significant, joint appendix page 837. The district court didn't know that the plaintiff was only awarded relief for one school year, whereas the ALJ awarded relief for five school years, joint appendix 837. Your Honor, I see that my time is up. You said you're brief and I think we understand your position. Sum it up, you want us to affirm. Absolutely, Your Honor. We would like the court to affirm. That's what you want. No remand. We're trying to get positions out of these lawyers. Sometimes it's hard to. We don't want a remand, Your Honor. You wanted a permit. Your Honor, I was saying, I saw you, I wanted to be affirmed. Upheld. I understand. Absolutely, Your Honor. Thank you for being here. Thank you for your time. Good to see you. Thank you. Thank you. Mr. Bader, you say some time. To stick with the theme, Your Honor, we want to be reversed and remanded. I've appreciated the panel's questions here this morning and some of the comments and getting some inclination as to where you may be leaning. So what I want to do with my remaining time here is frame the issue this way. If what this court holds is that a plaintiff can give consent for a former attorney to bring a motion where there's no representation, there's no retainer agreement, it's just I consent to you, my old lawyer, doing this. If that becomes the standard, there are three significant points that we want to make sure we raise. The first is this, and it's set out in Brown v. General Motors case. Former attorneys don't owe the same obligations to their clients. By bringing these motions on their own behalf, they compromise the parent's ability to control the case. That's not an abstract, that's not a hypothetical situation. I will tell this panel, settlement of cases, in this case, in particular, is extraordinarily difficult when former attorneys are negotiating on their own behalf for work that they did for somebody that they don't represent anymore. Point number two, all of this can be redressed through a retainer agreement. When you look at Judge Schroeder's order, among other things, it is clear that Mr. Weiner in California knows what he's doing. This is the kind of law that he practices. If he's coming across the country to take on these cases, he can put together appropriate retainer agreements within the bounds of professional responsibility that create recourse for how he gets paid in the event that he is discharged before final judgment. I agree with Mr. Howard, they could have brought the motion, they could have included that, that's not what happened. Can I ask how that, because something your colleague said did make me wonder about that, like how can they bring the motion if they can't really, they don't know how much time the former attorneys put in and what their work was worth, like how can they attest to the former attorney's e-request, how does that work? I don't, I think the best answer to that is they need to communicate with their clients and figure out how they gather that information. I mean certainly they were, Mr. Weiner and his firm were able to do that. I was trying to think like back when I was in practice if there had been a former lawyer and they're like here, here's my hours, here's what I charge, here's what I spent my time on, I'd like you now to sign the paper saying that that's all correct. I don't know if I want to do that. I want to be as helpful as I can but I don't want to go too far afield here. I think had that happened and the Woods Charter School said wait a second, we think that the fees requested by Mr. Weiner's firm are too much, then that particular issue could be litigated and input could come in from him through an affidavit. That's not what I'm saying. I'm really just trying to figure out the kind of vehicle. What does this vehicle look like? And I had sort of thought oh, the current lawyer can just ask for the prior lawyer's fees but now I am sort of troubling what you're asking of the current lawyer in terms of attesting to the at least good faith validity of the former lawyer's fee request. Well, in this case, the former lawyers, if I remember correctly, had at least two independent affidavits from experts in the field that talked about their training capability and what they did. So presumably the current lawyers could have worked with a third party to say here are the entire fees, here are these lawyers, I can vouch for an independent review to say it's relevant and then simply submit that all in one package on behalf of the plaintiff. Right. I think that's exactly right. And that, when the motion is brought through that vehicle by the plaintiff, then it avoids these issues of former attorneys moving on their own litigation and creating these potential disagreements and compromising the parent's ability to control the litigation. And the last point, and I would certainly be remiss if I didn't say this, is this is not why fee shifting is permitted under this act. We don't disagree that certainly the Woods Charter School thinks Congress is correct and noble in saying we want to make sure that if parents need to bring suits under this act, that it's not cost prohibitive, that there's a fee shifting mechanism. But the purpose of that, and in defining prevailing party very specifically, very specifically as the parent of a child with a disability, the purpose is not for former attorneys working up these cases to then come in after the fact and bring motions and then create what amounts to really peripheral litigation about whether or not they have consent. If consent is anything other than representation, that's what we are then asking the district courts to resolve. And that puts schools, including this charter school, in a position where we don't know who is going to necessarily bring the motion and how it's going to be brought. Appreciating that you know how much work went into this case. You know how long the ALJ hearing was. It's not as though you weren't on notice that there was an earlier set of lawyers that would probably be wanting their fees. I guess I'm not quite sure where the notice problem comes in. I'm not saying it's a notice problem strictly, just that the school, as any defendant in a fee shifting case, they should be able to say, well, our fee exposure is to the party. Well, that's who got the money, so I guess we're all square. Well, I think at a fundamental level, that's not who brought the motion. And I appreciate that Judge Schroeder was able to find a way, using this consent test, to say, I'm going to let a former attorney who doesn't represent the plaintiff bring the motion for consent. But I don't see a notice problem here. If the current lawyer had sought the entire fee request, I don't see how that gives you more notice than if two different lawyers seek separate amounts that add up to the total fee request. Why is your notice affected by whether this comes in the form of one motion or two? Well, we may be talking past each other with notice, but just as an example in this case, the plaintiffs brought their motion first. So then we said, okay, here's the attorney's fee motion. Here it is.  maybe, phew, no one's asking. Well, I don't know if we've necessarily thought that, but we had the request at relief. It was the attorney's fee motion. It was only for the, on the face of it, it was for the earlier counsel. You're arguing that it could have been done a different way, your way. It could have been done perhaps your way. Judge Schroeder found and determined it could be accomplished another way, his way, this way, the way it was done. The question is, well, is there anything wrong with that? And you don't challenge as clearly erroneous any of the facts recited by Judge Schroeder. Isn't that correct? That's right. That's right. Okay. But the issue again remains that mechanism, and I don't want to be too redundant here. I appreciate the court's time in giving me a chance to continue to engage. That's not what the statute provides in the way of consent. With that, we would respectfully request that this matter be remanded. Thank you very much. We appreciate your help.  your work. We appreciate your being here. With that, we would, as we explained earlier, visit with counsel in the well of the court. It's a tradition, a grand tradition of the Fourth Circuit Court of Appeals, and we're not doing it right now, but we'll do it next time. With that, Mr. Clerk, we will adjourn court. Signing aye. This honorable court stands adjourned. Signing aye. This honorable court
judges: Robert B. King, Pamela A. Harris, Michael Stefan Nachmanoff